# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2015 Term

**FILED**

**June 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Nos. 13-0748 & 14-0349**

---

**LAWYER DISCIPLINARY BOARD,**
Petitioner

**V.**

**DAVID S. HART,**
Respondent

---

**Lawyer Disciplinary Proceedings
Nos. 11-01-496; 12-01-111; 12-01-421;
12-01-485; 12-01-498; 12-01-500; & 14-01-037**

**LAW LICENSE SUSPENDED AND OTHER SANCTIONS**

---

**Submitted: May 12, 2015
Filed: June 9, 2015**

Andrea J. Hinerman        David S. Hart
Senior Lawyer Disciplinary Counsel        Beckley, West Virginia
Office of Disciplinary Counsel        Respondent, *Pro se*
Charleston, West Virginia
Counsel for the Petitioner

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.      "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syllabus point 3, *Committee on Legal Ethics of The West Virginia State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

3.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary

Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

4. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus point 2, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

5. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other

penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

6. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

7. "A person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee." Syllabus point 7, *Lawyer Disciplinary Board v. Grafton*, 227 W. Va. 579, 712 S.E.2d 488 (2011).

8. "In a lawyer disciplinary proceeding, a mental disability is considered mitigating when: (1) there is evidence that the attorney is affected by a mental disability; (2) the mental disability caused the misconduct; (3) the attorney's recovery from the mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation;

and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely." Syllabus Point 3, *Lawyer Disciplinary Board v. Dues*, 218 W. Va. 104, 624 S.E.2d 125 (2005).

9.    ""In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).' Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989)." Syllabus point 7, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

**Davis, Justice:**

The Lawyer Disciplinary Board instituted these consolidated lawyer disciplinary proceedings against the respondent, David S. Hart ("Mr. Hart"). The disposition recommended by the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board included a one-year suspension of Mr. Hart's law license, in addition to other recommended sanctions. The Office of Disciplinary Counsel ("ODC") disagreed with the length of the proposed suspension and, ultimately, recommended a two-year suspension of Mr. Hart's law license, along with the other penalties as suggested by the HPS. Based upon this Court's review of the record submitted, the ODC's brief and argument,[1] and the applicable legal precedent, this Court disagrees with the length of the suspension recommended by both the HPS and the ODC. Instead, due to the egregious and repetitive nature of Mr. Hart's misconduct, this Court imposes a three-year suspension of Mr. Hart's law license and, further, adopts, with one addition, the remaining sanctions recommended by the HPS.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Hart has practiced law since his admission to the West Virginia State Bar

---

[1]We note that Mr. Hart failed to file a responsive brief in this matter, despite being ordered to do so by this Court in its briefing schedule. Mr. Hart appeared at the set time for oral argument; however, because of his failure to file a brief, the Court did not entertain oral argument from Mr. Hart. *See* W. Va. R. App. P. R. 19(d).

in 1999. His legal career has been focused in Beckley, West Virginia. This Court's review consists of two separate disciplinary cases that were filed against Mr. Hart.

The first Statement of Charges was filed with this Court on July 30, 2013, and was designated with Supreme Court Number 13-0748. This first case consisted of complaints from six of Mr. Hart's clients. A hearing was held, testimony was elicited from Mr. Hart and the six complainants, and evidence was submitted.

A second case arose prior to the HPS's issuance of a report and recommended disposition on the first case. The second Statement of Charges was filed with this Court on April 11, 2014, and was docketed as Supreme Court Number 14-0349. It included complaints from one of Mr. Hart's clients. The HPS heard evidence from both Mr. Hart and the complainant.

### A. Complaints Before ODC and Findings by the HPS

The HPS, with agreement of the parties, determined that it would file one report and recommended disposition to cover both proceedings. The combined recommendation report was filed with this Court on January 20, 2015. Thus, both cases are considered in this Opinion, and a brief summary of the underlying complaints is included herein.

**1. No. 13-0748: Complaint of Greta J. Walker.** Ms. Walker retained Mr. Hart to represent her in a divorce case; one issue was the distribution of a 401(k) account held by Ms. Walker's former husband. A temporary order was issued in the divorce case on or about August 27, 2007, prohibiting both parties from making "any withdrawal from any retirement account, 401(k), pension or other such retirement account held by that party and in that party's name as a result of any period of employment during the parties' marriage. . . ." Ms. Walker alleged that Mr. Hart failed to forward this order "freez[ing]" the account. The final order stated that Ms. Walker was

> entitled to an equitable distribution of the [ex-husband's] 401(k) account, with [Ms. Walker] being entitled to receive an amount equal to one-half of the money or assets held in the 401(k) account at the time of the parties' separation on June 2, 2007. Counsel for [Ms. Walker] shall be responsible for the preparation of a Qualified Domestic Relations Order [("QDRO")] necessary for the division of the [ex-husband's] 401(k).

Ms. Walker contended that Mr. Hart failed to prepare the QDRO; therefore, she did not receive her equitable share from the 401(k).

Ms. Walker contacted Mr. Hart on numerous occasions, but he did not return her telephone calls. She attempted to obtain information about the matter from the court system, but was repeatedly told to contact her attorney. By letter dated October 28, 2011, ODC sent Mr. Hart a copy of the complaint and directed him to file a response to the ethics complaint within twenty days. After receiving no response, on December 7, 2011, ODC sent

3

a second letter by certified and first class mail directing Mr. Hart to file a response by December 20, 2011, and advising him that his failure to do so may result in a subpoena *duces tecum* being issued for his appearance at ODC for a sworn statement, or the allegations in the complaint would be deemed admitted and the matter would be referred to the Investigative Panel of the Lawyer Disciplinary Board. This letter was delivered on December 8, 2011. Thereafter, on December 22, 2011, Mr. Hart requested an additional ten days to provide his response, and his request was granted.

On January 3, 2012, Mr. Hart provided a verified response to the complaint, stating that Ms. Walker was to provide a copy of the temporary order to the investment account holder. After the final order was issued, Mr. Hart stated he attempted to prepare the QDRO, but encountered problems; however, he was unable to recall any specifics and had no notes or correspondence. Mr. Hart stated he would contact the investment holder to obtain information regarding the account and would forward that information upon its receipt.

On March 15, 2012, ODC requested a status update from Mr. Hart regarding his progress in completing the QDRO, as well as copies of any correspondence directed to the account holder. After receiving no response from Mr. Hart, on May 22, 2012, ODC again requested a status update and advised Mr. Hart that the request was a lawful demand for

4

information within the meaning of Rule 8.1(b) of the West Virginia Rules of Professional Conduct. Mr. Hart, again, failed to respond. A subpoena *duces tecum* was issued for Mr. Hart's appearance at ODC on August 30, 2012, to give a sworn statement concerning this matter.

At his August 30, 2012, appearance, Mr. Hart maintained he had informed Ms. Walker that she needed to provide the temporary order to the account administrator because she had the information regarding the account. Further, Mr. Hart said one of his assistants had been working on this matter; however, the assistant left his employment in March 2012. When he reviewed the file, Mr. Hart realized that the QDRO had not been entered and that he would submit it to the Court and to the ex-husband's attorney. When questioned about his lack of response to ODC, Mr. Hart admitted "there's no good reason why I didn't [respond]."

On November 7, 2012, Ms. Walker notified ODC that Mr. Hart did submit the QDRO, but then she received a letter from the investment holder indicating there were no investments with that company. Ms. Walker was advised that the account was with a different holder. Ms. Walker attempted to contact Mr. Hart to advise him of this information, but she was unable to talk with him because he did not return her calls. On December 17, 2012, a copy of Ms. Walker's letter was forwarded to Mr. Hart, and a response was requested

within ten days. Mr. Hart did not respond. On or about January 17, 2013, ODC again requested a reply to Ms. Walker's letter. No response was received.

The HPS found that Mr. Hart violated several of the West Virginia Rules of Professional Conduct[2] ("Rule" or "the Rules"). Specifically, in Ms. Walker's complaint, it was found that Mr. Hart failed to work diligently in violation of Rule 1.3,[3] and failed to communicate with Ms. Walker as required by Rules 1.4(a) and (b).[4] Lastly, the HPS concluded that Mr. Hart violated Rule 8.1(b)[5] when he failed to respond to ODC's requests

---

[2]By order entered September 29, 2014, this Court approved comprehensive amendments to the West Virginia Rules of Professional Conduct. While the amendments became effective January 1, 2015, this Opinion applies the version of the Rules that was in effect at the time of Mr. Hart's misconduct. However, we note that the substance of the new Rules would not have resulted in a different disposition of this case.

[3]West Virginia Rule of Professional Conduct 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4]Rule 1.4, sections (a) and (b), of the West Virginia Rules of Professional Conduct directs as follows:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5]The relevant portion of Rule 8.1(b) of the West Virginia Rules of Professional Conduct states that

(continued...)

6

for information.

**2.  No. 13-0748:  Complaint of Orban H. Schlatman.**  In 2010, Mr. Schlatman and his wife retained Mr. Hart to appeal Mr. Schlatman's criminal conviction for second degree sexual assault following a jury trial.  They paid a fee of $7,500.00 to Mr. Hart. Mr. Hart filed an appeal on or about May 26, 2011, which was untimely.  This Court remanded the matter to the circuit court to "promptly resentence [Mr. Schlatman] for purposes of appointment of counsel and the filing of an appeal[.]"  Mr. Schlatman was resentenced on October 19, 2011.

Mr. Schlatman filed his complaint against Mr. Hart on February 24, 2012, alleging that the appeal had not been perfected.  Mr. Schlatman stated that Mr. Hart told them that the appeal had been filed; however, when he or his wife contacted the Supreme Court, they were informed that an appeal had not been filed.  By letter dated February 27, 2012, ODC sent Mr. Hart a copy of the ethics complaint and directed him to file a response within twenty days.  After receiving no response, on April 13, 2012, ODC sent a second letter by

[5](...continued)
a lawyer . . . in connection with a disciplinary matter, shall not:

(b) . . . knowingly fail to respond to a lawful demand for information from . . . disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

7

certified and first class mail directing Mr. Hart to file a response by April 25, 2012, and advising him that his failure to do so may result in a subpoena *duces tecum* being issued for his appearance at ODC for a sworn statement, or the allegations in the complaint would be deemed admitted. Mr. Hart received this letter on or about April 17, 2012; and, on May 3, 2012, Mr. Hart provided a verified response. He acknowledged that he missed the first deadline for filing an appeal but had filed a motion with the Supreme Court to extend the time frame to file the petition. Mr. Schlatman was resentenced for a second time, and Mr. Hart filed a notice of appeal. Mr. Hart said he later realized that the notice should have been filed with the Supreme Court. He then filed the notice with this Court along with a motion to extend time. At the time he filed his response with ODC, Mr. Hart indicated that he had not yet received any response from the Supreme Court regarding his motion.

On June 25, 2012, Mr. Schlatman informed ODC that Mr. Hart had misrepresented the status of the appeal. A response was requested from Mr. Hart within ten days. He also was advised that the request was a lawful demand for information. Notwithstanding these communications, Mr. Hart failed to respond. On August 13, 2012, another request was made of Mr. Hart. By letter received on or about September 11, 2012, Mr. Hart stated that he was awaiting entry of a second order re-sentencing Mr. Schlatman.

On December 17, 2012, ODC requested a status update from Mr. Hart within

8

ten days. Mr. Hart ignored this request. On January 17, 2013, ODC again requested a status update. Again, Mr. Hart did not respond. On February 14, 2013, Mr. Schlatman notified ODC that Mr. Hart had blocked Mr. Schlatman's calls. Further, Mr. Schlatman stated that his wife contacted this Court and was informed that no appeal had been filed. ODC followed up with this Court on February 20, 2013, and was informed that nothing had been filed on Mr. Schlatman's behalf. On March 6, 2013, Mr. Hart informed ODC that Mr. Schlatman's appeal had been perfected on February 25, 2013.

In Mr. Schlatman's matter, the HPS found that Mr. Hart did not work diligently on Mr. Schlatman's appeal and failed to respond to his client's requests for information in violation of Rules 1.3[6] and 1.4(a).[7] Mr. Hart also was found to have violated Rule 1.1[8] because he failed to file at least two appeals of Mr. Schlatman's criminal conviction. Finally, the HPS found that Mr. Hart also engaged in dilatory practices which brought the administration of justice into disrepute, and failed to make reasonable efforts consistent with Mr. Schlatman's objective in violation of Rule 3.2.[9]

---

[6]*See* note 3, *supra*.

[7]*See* note 4, *supra*.

[8]Rule 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[9]Rule 3.2 states that "[a] lawyer shall make reasonable efforts to expedite
(continued...)

9

**3. No. 13-0748: Complaint of Tony R. Henderson, Jr.** Tony Henderson, Jr., retained Mr. Hart to represent him in a child support case in March 2011. Mr. Henderson filed a complaint with ODC on July 24, 2012, alleging that Mr. Hart neglected the matter and failed to respond to requests for information about the case. On June 27, 2012, Mr. Henderson terminated Mr. Hart's representation and requested a refund of the retainer fee. Mr. Henderson received a $1,000.00 refund; however, he had paid a $3,500.00 retainer. Thus, Mr. Henderson requested an accounting of the retainer fee, but did not receive one.

By letter dated July 30, 2012, ODC sent Mr. Hart a copy of the complaint and directed him to file a response within twenty days. On August 30, 2012, Mr. Henderson submitted additional evidence to ODC: Mr. Henderson stated that he also had paid $4,000.00 to Mr. Hart in February 2011 and had made another payment of $3,750.00 in March 2012. Mr. Henderson had requested an accounting of these payments, as well. Mr. Henderson alleged that Mr. Hart ignored numerous phone messages and email messages, and canceled scheduled meetings.

After receiving no response, ODC sent a second letter on September 28, 2012, directing Mr. Hart to respond by October 8, 2012, and advising him that his failure to do so

---

[9](...continued)
litigation consistent with the interest of the client."

may result in a subpoena *duces tecum* being issued for his appearance at ODC for a sworn statement, or the allegations in the complaint would be deemed admitted. On December 17, 2012, ODC again sent a letter to Mr. Hart via certified mail notifying him of the complaint. Regardless, Mr. Hart did not file any response in Mr. Henderson's matter. However, Mr. Hart admitted at a January 22, 2014, hearing that he did not prepare any type of accounting or itemized statement reflecting his services for Mr. Henderson.

Because Mr. Hart failed to produce an accounting and/or itemized statement detailing his services as Mr. Henderson had requested and failed to return any unearned portion of the fee Mr. Henderson had paid to Mr. Hart, the HPS found that Mr. Hart violated Rule 1.15[10] regarding safekeeping property and Rule 1.16(d)[11] detailing termination of

---

[10]The relevant portion of Rule 1.15 of the West Virginia Rules of Professional Conduct provides as follows:

> (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion that is in dispute shall be kept separate by the lawyer until [the] dispute is resolved.

[11]Rule 1.16(d) states:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering

(continued...)

11

representation. Further, the HPS determined that Mr. Hart violated Rules 1.3,[12] 1.4(a) and (b),[13] and 8.1(b).[14]

**4. No. 13-0748: Complaint of Casey M. Johnson.** Casey Johnson hired Mr. Hart to represent her in a custody modification. Ms. Johnson met with Mr. Hart on January 4, 2011, and he asked her to pay half of a $2,500.00 retainer fee, as well as the filing fees, within forty-five days, and he would initiate proceedings. Ms. Johnson contended that she paid the filing fees, half of the retainer, and then made a final payment on June 6, 2011.

Ms. Johnson alleged that she did not hear from Mr. Hart again until August 2011, when he called and advised that the modification had not yet been filed. He told her that her case "fell through the cracks" but assured her that the modification would be filed within a week. Ms. Johnson stated that she had not heard from Mr. Hart since that telephone conversation, despite calling his office numerous times and leaving voice mails, as well as

---

[11](...continued)
papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[12]*See* note 3, *supra*.

[13]*See* note 4, *supra*.

[14]*See* note 5, *supra*.

messages with his staff.

Ms. Johnson faxed a letter to Mr. Hart in April 2012 "informing him his services would no longer be needed." Moreover, Ms. Johnson also requested a refund of her retainer fee and the filing fees she had paid. Ms. Johnson filed her complaint with ODC on August 28, 2012. By letter dated August 29, 2012, ODC sent a copy of the complaint to Mr. Hart and directed him to file a response within twenty days. After receiving no response, on December 17, 2012, ODC sent a second letter by certified and first class mail directing Mr. Hart to file a response by January 2, 2013. Mr. Hart failed to file any response in this matter.

Mr. Hart admitted that he owed Ms. Johnson a refund. The HPS determined that Mr. Hart violated Rule 1.3[15] for failing to diligently pursue Ms. Johnson's case, Rule 1.4[16] for his lack of communication with his client, Rule 1.16(d)[17] for failing to refund Ms. Johnson's unused paid fees upon her terminating his representation, and Rule 8.1(b)[18] because he failed to respond to ODC's requests for information.

---

[15]*See* note 3, *supra.*

[16]*See* note 4, *supra.*

[17]*See* note 11, *supra.*

[18]*See* note 5, *supra.*

13

**5. No. 13-0748: Complaint of Duane L. Hammock.** Mr. Hart was appointed to represent Duane L. Hammock in a criminal matter that proceeded to a jury trial. Mr. Hammock wanted to appeal his conviction, and Mr. Hart was to file the appeal. Mr. Hammock requested copies of the evidence used against him, specifically a surveillance CD, audio CD, and a transcript. Mr. Hammock alleged that he never received any response from Mr. Hart.

On August 31, 2012, Mr. Hammock filed a complaint with ODC and included copies of his correspondence to Mr. Hart and to the circuit court judge, wherein he had requested the evidence copies, as well as a request for a new attorney to be appointed. On September 6, 2012, ODC sent a copy of the complaint to Mr. Hart, and a verified response was received on September 12, 2012. Mr. Hart explained that another attorney within his law firm was initially appointed to represent Mr. Hammock; however, that attorney left the law firm and Mr. Hart took over the case. Mr. Hart stated that, against his advice, Mr. Hammock chose to go to trial. Mr. Hart stated that he had strongly recommended that Mr. Hammock take the State's plea offer, which would have resulted in a shorter sentence based on the strength of the evidence against him.

Mr. Hart asserted that he had filed motions requesting a new trial, which were denied. Further, he had filed a notice of appeal, and provided a copy to Mr. Hammock. Mr.

Hart maintained that he previously had provided Mr. Hammock with a complete copy of his file, including the evidence items Mr. Hammock had listed in the complaint.

On September 26, 2012, ODC received Mr. Hammock's response, wherein he acknowledged that Mr. Hart had encouraged him to take the plea offered by the State. On December 19, 2012, ODC requested an update on the status of the appeal. Mr. Hart did not respond. On January 7, 2013, ODC again requested an update on the status of Mr. Hammock's appeal. Again, Mr. Hart did not respond.

On February 26, 2013, Mr. Hart informed ODC that the appellate brief and appendix record for Mr. Hammock's case had been filed. Thereafter, on March 6, 2013, ODC received a letter from Mr. Hammock, again informing ODC that he had not received the items he requested from Mr. Hart.

Based on the foregoing, the HPS determined that Mr. Hart failed to work diligently on Mr. Hammock's appeal and failed to respond to Mr. Hammock's requests for information in violation of Rules 1.3[19] and 1.4(a).[20] Mr. Hart also was found to have violated

---

[19]*See* note 3, *supra.*

[20]*See* note 4, *supra.*

15

Rule 1.1[21] regarding competence. Lastly, Mr. Hart was determined to have brought the administration of justice into disrepute, and to have failed to make reasonable efforts consistent with his client's objective in violation of Rule 3.2.[22]

**6. No. 13-0748: Complaint of Charles E. Banks.** Charles Banks filed a complaint with ODC against Mr. Hart on September 5, 2012. Previously, in late 2008, Mr. Banks had hired Mr. Hart to contest the administration of his father's estate. Mr. Banks paid a flat fee of $5,000.00, plus filing fees, for Mr. Hart's legal representation.

Mr. Banks provided a copy of the contract he had entered into with Mr. Hart, as well as copies of the cashier's check paid to Mr. Hart in the amount of $5,000.00. Mr. Banks also provided a copy of a letter dated January 25, 2010, that he had received from Mr. Hart, requesting payment of the $145.00 filing fee and a $75.00 payment for the service of process. Mr. Hart's letter indicated that he planned to have the petition ready to file in the circuit court by the first week of February 2010. Mr. Banks alleged that, since receipt of the letter, Mr. Hart has failed to communicate with him regarding the case.

By letter dated September 7, 2012, ODC sent Mr. Hart a copy of the complaint

[21]*See* note 8, *supra.*

[22]*See* note 9, *supra.*

16

and directed him to file a response within twenty days. After receiving no response, a second letter was sent on December 17, 2012. Mr. Hart failed to file any response in this matter.

The HPS found that Mr. Hart failed to perform work in a diligent manner, failed to properly communicate with his client, failed to return an unearned retainer fee, and failed to respond to ODC's requests for information. For these reasons, the HPS concluded that Mr. Hart violated Rule 1.3,[23] Rule 1.4,[24] Rule 1.16(d),[25] and Rule 8.1(b).[26]

**7. No. 14-0349: Complaint of Martin Durham.** Martin Durham filed a complaint with ODC against Mr. Hart on January 23, 2014. Mr. Durham asserted that he spoke with Mr. Hart in September 2013 regarding a lawsuit he wanted to file that allegedly resulted from a November 11, 2009, assault on Mr. Durham. Mr Durham stated that Mr. Hart agreed to contact him again, but, as of January 5, 2014, Mr. Hart had not done so. Mr. Durham alleged that he does not know if Mr. Hart ever filed anything on his behalf.

Mr. Durham also contended that Mr. Hart had represented him in another

---

[23]*See* note 3, *supra.*

[24]*See* note 4, *supra.*

[25]*See* note 5, *supra.*

[26]*See* note 11, *supra.*

17

matter, a civil case, following a motor vehicle accident. According to Mr. Durham, that case settled for $18,000.00. Mr. Hart received $6,000.00, and Mr. Durham received $5,955.00. The remaining money, amounting to $4,154.04, was to be paid to a third party. Mr. Durham learned that the third party was no longer in business. Mr. Durham then contacted the Social Security Administration and was told he owed nothing. Thereafter, Mr. Durham contacted Mr. Hart about releasing the remaining money because there were no other liens. Mr. Hart failed to respond to Mr. Durham's inquiries, so Mr. Durham filed a civil suit against Mr. Hart on April 8, 2013. On September 27, 2013, Mr. Hart paid the amount of $4,154.04 to Mr. Durham, and the civil suit was dismissed.

By letter dated January 27, 2014, ODC sent Mr. Hart a copy of the complaint and directed him to file a response to the ethics complaint within twenty days. After receiving no response, a second letter was sent on March 7, 2014. Mr. Hart did not respond to this complaint filed against him.

As a result of Mr. Durham's claims against Mr. Hart, the HPS declined to find that Mr. Hart violated Rule 1.3,[27] Rule 1.4,[28] and Rule 1.15.[29] The HPS found that Mr.

---

[27]*See* note 3, *supra.*

[28]*See* note 4, *supra.*

[29]*See* note 10, *supra.*

18

Durham's testimony was "almost completely incredible" and that Mr. Hart's explanation of the circumstances was "satisfactory." However, the HPS found that Mr. Hart had violated Rule 8.1(b)[30] because "[Mr. Hart] failed to comply with the [ODC's] lawful requests for information."

## B. Factors Considered by the HPS

In addition to the findings made by the HPS in each complaint, the HPS further concluded that "[Mr. Hart] has exhibited a pattern and practice of misconduct by continuing to fail to respond to his clients' inquiries, failing to act diligently in representing his clients, and in failing to respond to the [ODC]" and deemed such behavior to be an aggravating factor.[31] The HPS found that the following additional aggravating factors were present: (1) substantial experience in the practice of law; (2) multiple offenses; (3) lack of remorse; and (4) indifference to making restitution. Significantly, the HPS determined that no mitigating factors were present. Specifically, the HPS found that Mr. Hart's claim that he suffered from undiagnosed depression did not meet the standard set forth in Syllabus Point 3 of *Lawyer*

---

[30]*See* note 11, *supra.*

[31]Part of the previous pattern of Mr. Hart's conduct, as determined by the HPS, included the fact that Mr. Hart had a prior disciplinary offense. In that previous matter, Mr. Hart was charged with violating Rule 1.3, Rule 1.4, and Rule 8.1(b) in a matter where it was alleged that he failed to timely perfect an appeal of a denial of a petition for writ of habeas corpus. By an order entered September 13, 2007, this Court (a) reprimanded Mr. Hart for his misconduct; (b) required Mr. Hart to complete six additional hours of continuing legal education during the 2006-2008 reporting year; and (c) ordered Mr. Hart to pay the costs of that proceeding.

*Disciplinary Board v. Dues*, 218 W. Va. 104, 624 S.E.2d 125 (2005),[32] for when a mental disability is considered a mitigating factor.

### C. *The HPS's Recommendations and ODC's Objections*

To this Court, the HPS recommended that Mr. Hart be (1) suspended for one year; (2) required, prior to petitioning for reinstatement, to issue refunds to Casey M. Johnson in the amount of $2,650 and Charles E. Banks in the amount of $5,200, and provide proof thereof to ODC; (3) required to issue an itemized statement of account to Tony R. Henderson, Jr., and provide proof thereof to ODC; and (4) required to pay the costs of the disciplinary proceeding.

ODC filed an objection and recommended a suspension period of eighteen months. The recommendation by ODC was based on its disagreement with the HPS's findings in Mr. Durham's complaint, Supreme Court Case No. 14-0349. Subsequent thereto, ODC filed a motion to consider an additional aggravating factor. ODC moved this Court to enhance the previously-requested sanctions because, in its opinion, an additional aggravating factor had been committed since the HPS's recommendations. Because Mr. Hart failed to file a brief in this case, in direct contravention of this Court's briefing schedule, ODC

---

[32]See *infra* Section III for application of the *Dues* case. *See Lawyer Disciplinary Bd. v. Dues*, 218 W. Va. 104, 624 S.E.2d 125 (2005).

recommended an additional six-month suspension consecutive to its previous suggestion of eighteen months. Thus, ODC's final recommendation to this Court is that Mr. Hart receive a total suspension of twenty-four months, along with imposition of the other penalties as suggested by the HPS.

## II.

## STANDARD OF REVIEW

In lawyer disciplinary proceedings, this Court reviews *de novo* the recommended decision of the HPS:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

While affording deference to the Board, this Court is responsible for determining the ultimate resolution of lawyer disciplinary proceedings. As such, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of The W. Va. State Bar v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

21

Mindful of these standards, we proceed to consider the legal arguments.

## III.

## DISCUSSION

Before this Court, ODC objects to the length of the recommended suspension by the HPS. Rather than the one-year license suspension proposed by the HPS, ODC urges this Court to impose a two-year license suspension. This objection is based, in part, on ODC's disagreement with the HPS's factual determinations in the complaint filed by Mr. Durham. Ultimately, however, ODC contends that Mr. Hart engaged in additional misconduct after the HPS completed its report, and that his law license should be suspended for a longer period of time. In all other regards, ODC stands in agreement with the HPS's findings and recommendations.

In review of this case, we acknowledge that ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995). There is no contention with the findings made by the HPS regarding Supreme Court Case Number 13-0748, which consists of complaints from six individuals. In the absence of arguments contrary to the HPS's findings, this Court will not disturb the underlying determinations that Mr. Hart violated the West Virginia Rules of Professional Conduct as indicated. *See Lawyer*

22

*Disciplinary Bd. v. Cunningham*, 195 W. Va. 27, 34-35, 464 S.E.2d 181, 188-89 (1995) ("The burden is on the attorney at law to show that the factual findings are not supported by reliable, probative, and substantial evidence on the whole adjudicatory record made before the Board." (internal citation omitted)).

However, ODC disagrees with the HPS's findings in Mr. Durham's complaint, Supreme Court Case Number 14-0349. In the Durham matter, the HPS found that Mr. Hart violated only Rule 8.1(b) for failing to respond to ODC's requests for information. However, ODC asserts that the evidence proves that Mr. Hart failed to communicate with Mr. Durham about the motor vehicle accident matter and, further, neglected the case to the point that Mr. Durham was forced to file suit against Mr. Hart to recoup the remaining settlement funds.

The record is clear that Mr. Hart held the remainder of Mr. Durham's settlement funds for more than fourteen months. Even then, Mr. Durham received his money only after filing a civil suit against Mr. Hart. Additionally, Mr. Hart acknowledged that his last communication with Mr. Durham was in January 2012. When questioned about his attempts to contact Mr. Durham and any inquires he had made regarding the alleged outstanding liens, Mr. Hart stated: "What work had I done? I don't know that I specifically picked up the file and done anything with it." In addition to the HPS's finding that Mr. Hart violated Rule 8.1(b), we also find that the evidence clearly and convincingly supports a

23

finding that Mr. Hart violated his duties owed to Mr. Durham with regard to Rules 1.3,[33] l.4(a) and (b),[34] and l.15(b)[35] of the Rules of Professional Conduct.

Having settled the allegations and associated rule violations in this case, we now turn our attention to the appropriate sanctions to be imposed for Mr. Hart's misconduct. As previously explained, while we afford substantial deference to the findings and conclusions of the HPS, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Blair*, 174 W. Va. 494, 327 S.E.2d 671. It is well settled that

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court

---

[33]*See* note 3, *supra.*

[34]*See* note 4, *supra.*

[35]West Virginia Rule of Professional Conduct 1.15(b) provides:

> (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998). We analyze these factors with the additional admonition that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics v. Keenan*, 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994). After a thorough review of the record, this Court ascertains that Mr. Hart breached all four of the *Jordan* factors.

First, Mr. Hart's conduct violated duties owed to his clients, to the public, to the legal system, and to the legal profession. The current disciplinary cases against Mr. Hart consist of complaints from seven different clients. In regard to those clients, Mr. Hart failed to perfect appeals, violated his duty of communication, and agreed to perform certain legal services but failed to perform those services and, additionally, retained unearned fees after being discharged by clients. He violated his duties to the legal system and the profession by failing to comply with ODC's requests for information during the course of the underlying disciplinary matters, and ignoring orders from this Court regarding handling of appeals in

25

certain cases, as well as rebuffing the directive to file a response brief in the disciplinary matters currently before us for decision. Mr. Hart's conduct brought disrepute upon the legal system and profession.

Once formal charges were filed, Mr. Hart failed to timely file answers, failed to file discovery, failed to file responses to ODC's motions, failed to submit witness and exhibit lists, and failed to file proposed findings of fact and conclusions of law after each hearing. In these seven matters, the record reflects that Mr. Hart failed to respond to twenty-one letters sent by ODC seeking information about the complaints.

In Ms. Walker's case, Mr. Hart admitted that he failed in his duty to communicate with her and that he neglected her matter. In Mr. Schlatman and Mr. Hammock's cases, both criminal matters involving incarceration, Mr. Hart failed to timely perfect appeals to this Court, despite direct orders from this Court to do so. In Mr. Schlatman's case, Mr. Hart admitted that "[t]he failure to file the appeal on a timely basis was due to the neglect of the petitioner's counsel, and was through no fault of the petitioner." In the cases involving Mr. Schlatman, Mr. Henderson, Ms. Johnson, and Mr. Banks, Mr. Hart failed to perform work for which he already had received a fee from the client. Further, he neglected to provide accountings of his work when asked and avoided returning fees to the clients for work that he admitted he had failed to perform. All of the aforementioned clients

26

testified to Mr. Hart's lack of adequate communication with them regarding their cases, even to the extent of avoiding emails and voice messages. Mr. Hart's actions and failure to act when needed violated duties owed to his clients, to the public, to the legal system, and to the legal profession.

Second, we review the degree of intransigence in Mr. Hart's behavior. In doing so, we determine whether Mr. Hart's behavior was intentional, knowing, or negligent. The HPS found, and we agree, that Mr. Hart acted intentionally and knowingly. Mr. Hart acknowledged that he was aware of his clients' attempts to contact him and that he had received the correspondence from ODC asking him to respond to requests for information. Mr. Hart provided no reasonable rationale for his intentional shunning of requests from clients, ODC, and this Court. Moreover, his failure to perform legal work for his clients, despite accepting retainers or being court-appointed for the work, was grossly negligent at best.

Third, the injuries, and potential injuries, caused by Mr. Hart's misconduct were great. During hearings pertaining to the complaints against Mr. Hart, witnesses expressed how they were harmed by his wrongful conduct. In addition to describing intangible emotional injuries, each of the witnesses testified that their experiences with Mr. Hart caused a lack of trust and confidence in lawyers and the legal system. Ms. Walker

stated that:

> I feel that [the legal system and her experience with Mr. Hart] really lets people down. When they're counting on something and something is owed to you and you've went through a hard, stressful time in your life, your attorney is supposed to be there and kind of guide you through it.

Ms. Johnson testified that "[i]t makes you leery of who you hire and give your money to." Mr. Hart's behavior had a negative impact on his clients' faith in other lawyers and the legal system. Further, Mr. Hart's failure to communicate and his delays in the underlying matters also created potential and real injury for all of these clients. His actions and failures to act resulted in monetary losses, as well as the potential for continued and/or additional incarceration for his criminal clients. Mr. Hart's violations caused real and significant injuries.

Fourth, several aggravating factors are present, and there is an absence of mitigating factors. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003). The *Scott* opinion, at Syllabus point 3, further explains that

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify

consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

213 W. Va. 209, 579 S.E.2d 550. By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Scott, id.*

The HPS found multiple aggravating factors in the present case. Significantly, no mitigating factors were found to apply to reduce the severity of the impact of Mr. Hart's behavior. The following aggravating factors were found to exist in this case: (1) prior disciplinary offenses; (2) substantial experience in the practice of law; (3) pattern and practice of failing to adequately communicate with clients and neglect of their cases; (4) pattern and practice of failing to respond to requests from ODC; (5) multiple offenses; (6) lack of remorse; and (7) indifference to making restitution.

Mr. Hart has exhibited a pattern and practice of accepting retainer fees but then failing to carry out services; failing to communicate with his clients; failing to expedite cases consistent with the interests of his clients; and failing to respond to ODC. Mr. Hart has been a licensed attorney for over fifteen years and is experienced in the practice of law.

29

Additionally, Mr. Hart's prior disciplinary action is an aggravating factor. Mr. Hart also showed a propensity for accepting and keeping retainer fees for work which he did not perform. He also failed to return fees when requested by his clients when they realized the degree of Mr. Hart's ineptitude in advancing their cases. In one case, a client had to sue Mr. Hart to obtain settlement funds owed to the client.

Further, in ODC's motion to consider an additional aggravating factor and to enhance the sanctions against Mr. Hart, the evidence shows that Mr. Hart, once again, ignored a directive of this Court and did not file a responsive brief. Not only does this behavior evince a continued pattern of misconduct, but it also shows a failure to obey an obligation imposed by a tribunal. As set forth in Syllabus point 7 of *Lawyer Disciplinary Board v. Grafton*, 227 W. Va. 579, 712 S.E.2d 488 (2011):

> A person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee.

Such misconduct is an additional aggravating factor that can be considered by this Court in the ultimate sanctions imposed in this case.

In addition to the multitude of aggravating factors present herein, we agree

30

with the HPS's determination that no mitigating factors exist in this case. While Mr. Hart

claimed at the hearing that he was suffering from undiagnosed depression during the time

frame of these complaints due to his ongoing divorce, he did not present any medical

testimony or evidence, nor did he call any witnesses on his behalf. Additionally, Mr. Hart's

divorce is now final, and he acknowledged that he is "two years away now[,] away from the

situation that's causing [him] to be overwhelmed . . . ."

Mr. Hart's current and continuing failures to comply with his obligations under

the Rules of Professional Conduct cannot be explained by any assertions of undiagnosed

depression. In Syllabus point 3 of *Lawyer Disciplinary Board v. Dues*, 218 W. Va. 104, 624

S.E.2d 125 (2005), we recognized that

> [i]n a lawyer disciplinary proceeding, a mental disability
> is considered mitigating when: (1) there is evidence that the
> attorney is affected by a mental disability; (2) the mental
> disability caused the misconduct; (3) the attorney's recovery
> from the mental disability is demonstrated by a meaningful and
> sustained period of successful rehabilitation; and (4) the
> recovery arrested the misconduct and recurrence of that
> misconduct is unlikely.

*See also Lawyer Disciplinary Bd. v. Rossi*, __ W. Va. __, 769 S.E.2d 464 (2015) (finding

alleged depression is not a mitigating factor in light of lack of evidence to support such a

diagnosis). In this case, there is no evidence that Mr. Hart suffered any mental disability or

that the alleged disability caused the misconduct because it appears that Mr. Hart never

sought treatment. Likewise, Mr. Hart cannot show that any recovery was demonstrated by

31

a meaningful and sustained period of successful rehabilitation, and no evidence was presented that the recovery arrested the misconduct and that recurrence of similar misconduct is unlikely.

Taking into account the aggravating factors, as well as the lack of mitigating factors, we conclude that the one-year suspension recommendation submitted by the HPS, as well as the two-year suspension recommended by the ODC, are too lenient for behavior that has become a clear pattern of continued wrongdoing. In the instant case, Mr. Hart's behavior exhibited a complete disregard for his clients, created great harm to his clients in their legal cases and personal lives, and evinced a complete disregard for the tribunals of this State and the direct orders of this Court. Mr. Hart's consistent failure to respond to ODC, coupled with his pattern of ignoring orders from this Court, also weighs in favor of an increased sanction. *See Lawyer Disciplinary Bd. v. Grindo*, 231 W. Va. 365, 371, 745 S.E.2d 256, 262 (2013) ("[T]he fact that Mr. Grindo failed to respond to the deadlines and entreaties of this Court regarding the filing of briefs certainly weighs heavily against Mr. Grindo.").

Based on all of the foregoing, we find that a three-year suspension from the practice of law is an appropriate sanction. In fashioning the punishment for Mr. Hart's misconduct, we are mindful of our prior holding that,

> "'[i]n deciding on the appropriate disciplinary action for
> ethical violations, this Court must consider not only what steps

32

would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989).

Syl. pt. 7, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. This Court previously has increased the recommended sanction in a lawyer disciplinary proceeding when a lawyer failed to communicate with his clients, caused them to suffer financial harm, and failed to respond to ODC. *See Rossi*, __ W. Va. __, 769 S.E.2d 464 (rejecting recommendation for one-year license suspension and imposing three-year suspension when lawyer failed to communicate with clients, caused financial harm, and failed to respond to ODC). *See also Lawyer Disciplinary Bd. v. Aleshire*, 230 W. Va. 70, 79-80, 736 S.E.2d 70, 79-80 (2012) (disagreeing with recommendation of one-year suspension, finding "Mr. Aleshire was completely unresponsive to his clients in these two matters and caused both of them actual monetary damage. Additionally, Mr. Aleshire has shown a consistent unwillingness to respond to opposing counsel, court orders, and the ODC. Therefore, we believe a three-year suspension [is warranted].").

Thus, we impose a three-year license suspension on Mr. Hart's law license. Further, we adopt the remaining recommendations made to this Court by the HPS with one addition pertaining to the complaint by Mr. Henderson. In addition to accepting the

33

recommendation of the HPS that Mr. Hart provide an itemized statement of account to Mr. Henderson, we additionally order that Mr. Hart must refund any unearned portion of the fee to Mr. Henderson prior to petitioning for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure.

## IV.

## CONCLUSION

For the foregoing reasons, we impose the following sanctions: (1) Mr. Hart's law license is suspended for a period of three years; (2) Mr. Hart must issue refunds to Casey M. Johnson in the amount of $2,650.00 and Charles E. Banks in the amount of $5,200.00, and provide proof thereof to the Office of Disciplinary Counsel prior to petitioning for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure; (3) Mr. Hart must provide an itemized statement of account to Tony R. Henderson, Jr., must refund to Mr. Henderson any unearned portion of the fee he paid, and must provide proof thereof to the Office of Disciplinary Counsel prior to petitioning for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure; and (4) Mr. Hart is ordered to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions Imposed.

34