736 S.E.2d 70

### LAWYER DISCIPLINARY BOARD, Petitioner

v.

### David A. ALESHIRE, Respondent.

No. 35667.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Nov. 9, 2012.

Rachael L. Fletcher Cipoletti, Esq., Chief Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

David A. Aleshire, Esq., Charleston, WV, Pro Se Respondent.

PER CURIAM:

This is a lawyer disciplinary proceeding brought against David A. Aleshire by the Office of Disciplinary Counsel ("the ODC") on behalf of the Lawyer Disciplinary Board ("the Board"). A Hearing Panel Subcommittee of the Board determined that Mr. Aleshire violated ten *Rules of Professional Conduct* and recommended that a number of sanctions be imposed against him, including a recommendation that Mr. Aleshire be suspended from practicing law for one year.

This Court rejected the Board's recommended sanctions and ordered both parties to file briefs in this Court.[1] Having considered all matters of record, we find that Mr. Aleshire's egregious conduct warrants a three-year suspension from the practice of law. In addition to this three-year suspension, we adopt the other sanctions recommended by the Hearing Panel Subcommittee which are as follows: (1) that Mr. Aleshire pay restitution in the amount of $500.00 to Carol J. Harless, and provide proof of said restitution prior to petitioning for reinstatement of his law license; (2) that he comply

---

1. This Court did not consider Mr. Aleshire's brief because it was not timely filed. He filed his brief on September 25, 2012, after oral argument in this matter.

with the duties of a suspended lawyer as outlined in Rule 3.28 of the *Rules of Lawyer Disciplinary Procedure*; (3) that he petition for reinstatement after serving his three-year suspension; (4) that he sit for and receive a passing score on the Multistate Professional Responsibility Exam prior to petitioning for reinstatement of his law license; (5) that he complete an additional twelve hours of continuing legal education in ethics prior to petitioning for reinstatement; (6) that he pay the costs incurred in this disciplinary proceeding; and (7) in the event that he successfully petitions to be reinstated to the practice of law, that he undergo two years of supervised practice by a member in good standing of the West Virginia State Bar whose practice includes tax and real estate matters.

## I.

### Standard of Review: Disciplinary Actions

In *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 289, 452 S.E.2d 377, 380 (1994), this Court took the opportunity to "resolve any doubt as to the applicable standard of judicial review" in lawyer disciplinary cases. Syllabus Point 3 of *McCorkle* holds:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State. Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), states: "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."

Rule 3.7 of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *See also* Syllabus Point 2, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15.[2]

In devising suitable sanctions for attorney misconduct, we have recognized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). With these standards in mind, we proceed to examine Mr. Aleshire's conduct.

## II.

### Factual Background, Charged Violations and Analysis

Mr. Aleshire is a lawyer practicing in Charleston, West Virginia. He was admitted to the West Virginia State Bar in May 1995.

**2.** Rule 3.15 of the *West Virginia Rules of Lawyer Disciplinary Procedure* provides:

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the *Rules of Professional Conduct* ... (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

On July 7, 2010, a two-count statement of ethical violations was filed against him. In this opinion we will (1) review the two complaints filed against Mr. Aleshire, (2) consider the aggravating and mitigating factors that are applicable, and (3) review the Hearing Panel Subcommittee's recommended sanctions. We begin with the complaint filed by Nedra Vance.

### Count I—Complaint of Nedra Vance

In 2004, Nedra Vance hired Mr. Aleshire to handle her personal and business taxes,[3] and to provide her with legal advice. Mr. Aleshire did not prepare a letter of engagement concerning the scope of the work he was to perform for Ms. Vance. Ms. Vance provided Mr. Aleshire with all of the tax documentation that he requested, including the original deed to her property. Ms. Vance testified that Mr. Aleshire stopped communicating with her in 2007. She attempted to call him numerous times and left a number of messages that were not returned. In addition to these phone calls, Ms. Vance wrote Mr. Aleshire letters, went to his residence, and left a note on his front door asking him to contact her. Mr. Aleshire failed to respond to any of these requests. By letter dated November 21, 2008, Ms. Vance requested that Mr. Aleshire return all of her documents so that she could retain a Certified Public Accountant ("C.P.A.") to handle her tax matters. This letter was returned to Ms. Vance and marked "unclaimed."

In December 2008, the Internal Revenue Service informed Ms. Vance that her taxes for the previous year had not been paid and that she needed to take immediate action to address this situation. After receiving this notice, Ms. Vance hired a C.P.A. who attempted to contact Mr. Aleshire to secure Ms. Vance's tax documents. Mr. Aleshire did not respond to the C.P.A. and he did not return the tax documents to Ms. Vance.

On January 28, 2009, Ms. Vance filed a complaint against Mr. Aleshire with the Office of Disciplinary Counsel. On January 29, 2009, the ODC sent a letter to Mr. Aleshire directing him to respond to Ms. Vance's complaint within twenty days. Mr. Aleshire did not respond to this letter. The ODC sent Mr. Aleshire another letter on March 10, 2009, directing him to respond to the complaint within ten days. This letter was returned to the ODC as "unclaimed" on March 31, 2009. The ODC then attempted to contact Mr. Aleshire by telephone and left numerous voice mail messages for him. Mr. Aleshire did not reply to any of these messages. On June 23, 2009, the ODC sent Mr. Aleshire another letter directing him to respond to the complaint. This letter was also returned to the ODC as "unclaimed."

On September 17, 2009, the ODC requested the issuance of a subpoena *duces tecum* to take the sworn statement of Mr. Aleshire. The Kanawha County Sheriff's Office returned the subpoena to the ODC on October 22, 2009, and indicated that it was unable to serve Mr. Aleshire. The Sheriff's Office informed the ODC that Mr. Aleshire was not at his residence or was not answering his door, and that he did not return their telephone messages. The ODC requested the issuance of a second subpoena for Mr. Aleshire on November 3, 2009, and hired a process server to attempt the service of process. The process server, John Weaver, made five attempts to serve Mr. Aleshire at his residence and left him two voice mail messages. These attempts were also unsuccessful.[4]

On February 23, 2011, a Hearing Panel Subcommittee of the Lawyer Disciplinary Board conducted a hearing in this matter. Ms. Vance testified before the Subcommittee

---

3. Mr. Aleshire was a Certified Public Accountant in 2004. He allowed his C.P.A. license to expire in June 2007. The West Virginia Board of Accountancy filed suit against Mr. Aleshire for holding himself out as a C.P.A. despite not having a current license. The Circuit Court of Kanawha County entered a default judgment order against Mr. Aleshire in this claim on February 7, 2011.

4. The Report of the Hearing Panel Subcommittee does not describe the exact circumstances that led Mr. Aleshire to finally respond to the ODC's repeated requests. The transcript of the February 23, 2011, hearing before the Subcommittee reveals that Mr. Aleshire responded to the ODC by March 2010.

that she filed her complaint because of Mr. Aleshire's failure to return her tax documents to her. As of the date of this hearing, Ms. Vance stated that Mr. Aleshire still had not returned the tax documents to her. The Hearing Panel Subcommittee determined that Mr. Aleshire "failed to abide by Complainant's (Ms. Vance) stated objectives of the representation and otherwise failed to diligently pursue her tax matters or to advise her that he no longer wished to represent her."

Based on this finding, the Subcommittee found that Mr. Aleshire violated Rules 1.2 and 1.3 of the *Rules of Professional Conduct.* Rule 1.2 concerns the scope of representation and states, in relevant part, "[a] lawyer shall abide by a client's decisions concerning the objectives of representation[.]" Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

The Hearing Panel Subcommittee also found that Mr. Aleshire's failure to respond to Ms. Vance's inquiries about her legal matters constituted a violation of Rule 1.4(a) of the *Rules of Professional Conduct,* which states:

Rule 1.4 Communication

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

Finally, the Hearing Panel Subcommittee found that Mr. Aleshire's failure to respond to the ODC's repeated requests to file a response to Ms. Vance's complaint was a violation of Rule 8.1 of the *Rules of Professional Conduct.* Rule 8.1 states, in relevant part: "[A] lawyer in connection with . . . a disciplinary matter, shall not: (b) . . . knowingly fail to respond to a lawful demand for information from . . . disciplinary authority[.]"

▌ Under our disciplinary rules, the ODC must prove its case by clear and convincing evidence. Syllabus Point 1, in part, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995) ("Rule 3.7 of the Rules of Lawyer Disciplinary Procedure . . . requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence."). However, in keeping with our established standard of review, the evidentiary findings of the Hearing Panel Subcommittee are afforded substantial deference. The record before us fully supports the Hearing Panel Subcommittee's determination and conclusion that Mr. Aleshire violated Rules 1.2, 1.3, 1.4, and 8.1 of the *Rules of Professional Conduct.*

## Count II—Complaint of Carol J. Harless

In November 2009, Carol J. Harless purchased a piece of real estate from Mountain Financial Solutions, LLC, a real estate company made up of Mr. Aleshire and his father, Clarence Aleshire. Ms. Harless agreed to purchase the property for $6,500.00 and agreed to pay $40.00 in closing costs to Mr. Aleshire. On November 17, 2009, Ms. Harless met Mr. Aleshire at the Kanawha County Courthouse and presented him with a check for $6,540.00 made payable to Mountain Financial Solutions. Mr. Aleshire refused to accept this check and informed Ms. Harless that the check must be made payable to "David Aleshire." Ms. Harless thereafter mailed Mr. Aleshire a check for $6,540.00 made payable to "David Aleshire." Mr. Aleshire deposited this check into his IOLTA account on November 23, 2009. Mr. Aleshire's bank records show that upon depositing this check, he immediately began using this money to pay personal expenses and wrote checks made payable to himself.

On November 23, 2009, Ms. Harless sent Mr. Aleshire an e-mail asking whether he had mailed the deed to the property to her. Mr. Aleshire responded by stating that he was waiting for the check to clear. Ms. Harless sent Mr. Aleshire further e-mails on November 25, November 30, December 3, December 14, and December 18 inquiring about the deed to the property and asking why he had not delivered it to her. Mr. Aleshire did not reply to any of these e-mails. Ms. Harless also wrote two letters to Mr. Aleshire and left him a number of voice mail messages asking why he had not delivered the deed. Mr. Aleshire did not reply to any of these messages.

On January 6, 2010, Ms. Harless filed a complaint against Mr. Aleshire with the ODC.[5] Due to the failed attempts to serve Mr. Aleshire in the Nedra Vance complaint, the ODC hired an investigator, P.M. Carver, to attempt service of process. Investigator Carver attempted to serve Mr. Aleshire at his residence seven times but was unsuccessful.[6]

While this complaint was pending, Ms. Harless retained an attorney, Clayton G. Anderson, to attempt to get Mr. Aleshire to provide her with the deed to the property. Attorney Anderson made multiple attempts to communicate with Mr. Aleshire by calling him and writing him letters. These attempts were unsuccessful. On June 15, 2010, Attorney Anderson filed an Amended Complaint and Motion for Preliminary Injunction and Permanent Injunction in the Circuit Court of Kanawha County against Mr. Aleshire. On August 6, 2010, the circuit court held a hearing in this matter and Mr. Aleshire claimed, for the first time, that he had not delivered the deed to Ms. Harless because she had not paid the agreed upon purchase price. Mr. Aleshire had no documentation supporting this claim. The circuit court judge allowed Mr. Aleshire to go to his office to retrieve the relevant documents. Upon returning, Mr. Aleshire produced a "revised" sales agreement which listed the purchase price for the property as $6,960.00. The Hearing Panel Subcommittee found that there was no evidence to corroborate Mr. Aleshire's contention that he had ever informed Ms. Harless that she owed him additional money. Mr. Aleshire also failed to explain why he accepted and deposited the initial check for $6,540.00, instead of returning it to Ms. Harless and demanding that she pay the agreed upon $6,960.00.

After the August 6, 2010, hearing, the parties entered into settlement negotiations that resulted in Ms. Harless agreeing to pay Mr. Aleshire an additional $900.00.[7] During these settlement negotiations, Mr. Aleshire requested that Ms. Harless withdraw her ethics complaint as a condition of the settlement. This request was withdrawn after Attorney Anderson informed Mr. Aleshire that such a condition would violate the *Rules of Professional Conduct*. After an agreement was reached, Attorney Anderson sent Mr. Aleshire a Mutual Release and Settlement Agreement. Mr. Aleshire failed to take any action upon receiving these documents. Attorney Anderson sent two follow-up letters inquiring about the status of the settlement. Mr. Aleshire failed to respond to these letters, prompting Attorney Anderson to file a motion to enforce the settlement with the circuit court. The circuit court held a hearing on October 4, 2010, and the parties seemingly agreed to the settlement terms. Attorney Anderson sent a copy of the Dismissal Order to Mr. Aleshire on November 2, 2010, requesting that he sign the document and return it for entry with the circuit court. Mr. Aleshire again failed to communicate with Attorney Anderson and did not execute the necessary settlement documents.

Due to Mr. Aleshire's inaction, Attorney Anderson filed an amended motion to enforce settlement on February 3, 2011. This resulted in another court order approving the settlement and dismissing the claim. Following this order, Mr. Aleshire again failed to execute the necessary settlement documents, and Attorney Anderson again sent him multiple letters requesting that he follow the court order. After these letters were sent, Mr. Aleshire agreed to meet Attorney Anderson and his clients in person on March 30, 2011, to resolve this matter. Attorney Anderson and Ms. Harless arrived at the meeting with a settlement check for $900.00. Mr. Aleshire did not show up for this meeting. He sent his father, Clarence Aleshire, in his place. Clarence Aleshire refused to accept the $900.00 and did not execute the settlement documents. Attorney Anderson wrote Mr.

---

5. Ms. Harless also filed a complaint against Mr. Aleshire with the Board of Accountancy because his business card indicated that he was also a C.P.A.

6. Mr. Aleshire contacted the ODC about this complaint in March 2010, and the ODC thereaf-

ter told the investigator to discontinue his attempts to serve Mr. Aleshire.

7. Ms. Harless testified that though she did not owe Mr. Aleshire any additional money, Attorney Anderson advised her to pay this $900.00 "in order to settle the thing and get it off our back."

Aleshire a letter on May 16, 2011, and requested that he put "something to me in writing as to how we can put this matter behind all of us." Mr. Aleshire did not respond to this letter. Attorney Anderson filed another motion to enforce settlement on July 7, 2011.

The Hearing Panel Subcommittee held a hearing on Ms. Harless' complaint on July 26, 2011. As of the date of this hearing, the matter had not been resolved and Mr. Aleshire was still in possession of the deed to the property that Ms. Harless purchased from his real estate company in November 2009.[8] Mr. Aleshire conceded in his testimony before the Hearing Panel Subcommittee that the actual purchase price of the property was $6,500.00. He stated that the additional $460.00 contained in the "revised" sales agreement represented half of the closing costs. Mr. Aleshire alleged that he performed the following legal work on behalf of Ms. Harless: paying the delinquent taxes on the property for 2009 and providing Ms. Harless with a receipt to show that the delinquent taxes had been paid, preparing the settlement sheet (which Ms. Harless testified that she never received), and being physically present at the closing. Mr. Aleshire charged Ms. Harless for these legal fees despite language contained in the sales agreement stating that it was the seller's sole responsibility to pay the delinquent taxes for 2009, and to pay for all of the seller's legal fees related to the sale of the property.

The Hearing Panel Subcommittee concluded that:

(Ms. Harless) has been deprived of both the purchase price of the property ($6,500.00) ... as well as the use of the property in question since November 2009 over a dispute with (Mr. Aleshire) concerning his bill for legal services in the amount

of $460.00. There is no evidence to corroborate (Mr. Aleshire's) contention that he was retained by Ms. Harless to serve as the Harlesses' counsel during the closing, that the Harlesses understood the nature and extent of legal services to be provided by (Mr. Aleshire) in relation to the closing, or that the Harlesses ever received any settlement statement setting out the legal services for which they were being charged. Finally, in requiring the Harlesses to pay a portion of the closing costs related to the payment of delinquent property taxes, (Mr. Aleshire) was reducing the amount of the legal fees that were actually the responsibility of Mountain Financial Solutions, LLC, a company in which (Mr. Aleshire) has a financial interest.

■ Because Mr. Aleshire accepted money for the purchase of property and failed to deliver the deed to the property due to a dispute over his alleged legal fees, and because he knowingly misrepresented the amount of the actual purchase price of the property in a circuit court hearing, the Hearing Panel Subcommittee found that he violated Rules 8.4(b); 8.4(c), and 8.4(d) of the *Rules of Professional Conduct.* These rules are as follows:

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

The Hearing Panel Subcommittee also found that Mr. Aleshire violated Rules 8.4(c), 1.2,[9] and 1.5 [10] when he required Ms. Harless

---

8. The matter was resolved on September 8, 2011.

9. Rule 1.2 of the *Rules of Professional Conduct,* entitled "Scope of Representation," requires a lawyer to consult with his/her client as to the decisions concerning the objectives of the representation. In the present case, Mr. Aleshire never discussed the legal work he was purportedly performing on behalf of Ms. Harless.

10. Rule 1.5 of the *Rules of Professional Conduct,* entitled "Fees," requires that "a lawyer's fee

shall be reasonable." Rule 1.5(b) states "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation." The Hearing Panel Subcommittee found no evidence that Mr. Aleshire told Ms. Harless that he was charging her any legal fees. Similarly, there is nothing in writing showing that Mr. Aleshire ever communi-

to pay half of the legal fees related to the closing of the property. The sales agreement stated that these costs were to be paid solely by Mountain Financial Solutions.

Finally, the Hearing Panel Subcommittee found that Mr. Aleshire's refusal to communicate with Ms. Harless' attorney throughout the underlying civil action, which necessitated the filing of multiple motions to enforce the settlement agreement, was a violation of Rule 8.4(d) of the *Rules of Professional Conduct.*

The record before us fully supports the Hearing Panel Subcommittee's factual findings related to Ms. Harless' complaint. Similarly, the record supports the Subcommittee's determination that Mr. Aleshire violated Rules 1.2, 1.5, 8.4(b), 8.4(c), and 8.4(d) of the *Rules of Professional Conduct.*

## III.

### Sanctions

■ We initially note that the ODC recommended that Mr. Aleshire's license to practice law be suspended for three years. The Hearing Panel Subcommittee rejected this recommendation and instead recommended a one-year suspension. In reviewing the sanctions recommended by the Hearing Panel Subcommittee, the factors this Court typically considers include:

"(1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syllabus Point 4, in part, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998). We are also mindful that:

[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).[11]

■ It is apparent from the record before us that Mr. Aleshire intentionally and repeatedly violated duties to his clients, the public, the legal system, and the legal profession. Mr. Aleshire failed to communicate with Ms. Vance, failed to file her tax returns, and failed to return her tax documents. This caused Ms. Vance considerable stress, necessitated that she hire another C.P.A., and resulted in the I.R.S. investigating her. Mr. Aleshire's failure to deliver the deed to the property that Ms. Harless purchased from his real estate company over an alleged legal fee dispute deprived her of the use of this property for almost two years. Ms. Harless had to retain another attorney and spend years in litigation to receive the property she purchased from Mr. Aleshire. Mr. Aleshire violated his duty to the legal system by continually circumventing the disciplinary process and failing to participate in the ODC's investigation. He violated his duty to the legal profession by charging unauthorized legal fees to Ms. Harless (the closing costs that by contract were the sole responsibility of the seller). Finally, Mr. Aleshire violated his duty to the legal profession by failing to communicate with Attorney Anderson and by failing to execute the necessary settlement documents, which resulted in Attorney Anderson filing multiple motions to enforce the settlement agreement.

---

cated with Ms. Harless regarding a legal fee he was charging her.

11. "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Committee on Legal Ethics of*

*the West Virginia State Bar v. Keenan,* 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). *Accord, Lawyer Disciplinary Bd. v. Sims,* 212 W.Va. 463, 469, 574 S.E.2d 795, 801 (2002) (per curiam) (Davis, J., concurring, in part, and dissenting, in part).

We next consider aggravating and mitigating factors. This Court has held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus Point 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). The Hearing Panel Subcommittee found the existence of the following aggravating factors: (1) dishonest or selfish motive, (2) multiple offenses, (3) failure to cooperate in the investigation of the disciplinary complaints, (4) failure to participate in the companion civil proceedings, (5) refusal to fully acknowledge the wrongful nature of his conduct, and (6) Mr. Aleshire's request that Ms. Harless withdraw her ethics complaint as a condition of their settlement agreement. We agree with the Hearing Panel Subcommittee's determination that these six aggravating factors are present in this case. We find it particularly troubling that Mr. Aleshire has refused to acknowledge the wrongful nature of his conduct. There is overwhelming evidence that Mr. Aleshire failed to communicate with his clients, the ODC, and Attorney Anderson during the civil proceeding. Mr. Aleshire took no responsibility for these communication problems, instead blaming them on his mail carrier, problems with his telephone, voice mail, computer, and e-mail. We note that when Ms. Harless mailed the $6,540.00 check to Mr. Aleshire, he received it in a timely fashion. However, Mr. Aleshire claims that when mail from his clients, opposing counsel, and the ODC was sent to the same address, he never received these items.

We next consider whether any mitigating factors are present. We have previously held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syllabus Point 2, *Scott, supra.* In *Scott*, we further explained:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; remorse; and (13) remoteness of prior offenses.

Syllabus Point 3, *Scott, supra.*

While not naming them directly as mitigating factors, the Hearing Panel Subcommittee found that Mr. Aleshire did not hold himself out as a licensed C.P.A. after his license expired in June 2007. Furthermore, the Hearing Panel Subcommittee determined that Mr. Aleshire was not familiar with the *Rules of Professional Conduct* that he violated and was "out of his depth in his substantive areas of practice." This factor appears to be one of the reasons the Subcommittee gave Mr. Aleshire a one-year suspension instead of the three-year suspension recommended by the ODC. We find that this factor weighs in favor of suspending Mr. Aleshire for three years. Mr. Aleshire had been a member of the state bar for over ten years at the time these ethical violations occurred. His ignorance of the *Rules of Professional Conduct* does not excuse or mitigate his ethical violations. Our review of the entire record reveals that the aggravating factors greatly outweigh the mitigating factors.

When weighing all of the factors set forth in Rule 3.16, we find that the one-year suspension recommended by the Hearing Panel Subcommittee is improper.[12] Instead, we agree with the ODC's recommendation that Mr. Aleshire's license to practice law be suspended for three years. Mr. Aleshire was completely unresponsive to his clients in these two matters and caused both of them actual monetary damage. Additionally, Mr. Aleshire has shown a consistent unwillingness to respond to opposing counsel, court

---

12. We agree with the other sanctions recommended by the Hearing Panel Subcommittee.

80

orders, and the ODC. Therefore, we believe a three-year suspension will accomplish the goals of our disciplinary system by (1) punishing Mr. Aleshire, (2) serving as a deterrent to other members of the bar, and (3) restoring public confidence in the ethical standards of our profession. For these reasons, we believe the public, the legal profession, and the legal system will be better served with the imposition of a three-year license suspension.

## IV.

### Conclusion

For the foregoing reasons, the recommendations in the April 2, 2012, Report of the Hearing Panel Subcommittee are adopted as modified, imposing the following sanctions on Mr. Aleshire: (1) that he be suspended from the practice of law for a period of three years; (2) that he pay restitution in the amount of $500.00 to Carol J. Harless, and provide proof of said restitution prior to petitioning for reinstatement of his law license; (3) that he comply with the duties of a suspended lawyer as outlined in Rule 3.28 of the *Rules of Lawyer Disciplinary Procedure*; (4) that he petition for reinstatement after serving his three-year suspension; (5) that he sit for and receive a passing score on the Multistate Professional Responsibility Exam prior to petitioning for reinstatement of his law license; (6) that he complete an additional twelve hours of continuing legal education in ethics prior to petitioning for reinstatement; (7) that he pay the costs incurred in this disciplinary proceeding; and (8) that in the event that he successfully petitions to be reinstated to the practice of law, that he undergo two years of supervised practice by a member in good standing of the West Virginia State Bar whose practice includes tax and real estate matters.

Law license suspended and other sanctions imposed.