IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

**FILED**

**February 15, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-1179

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

TIMOTHY M. SIRK,
A MEMBER OF THE
WEST VIRGINIA STATE BAR,
Respondent

Lawyer Disciplinary Proceeding

SANCTIONS IMPOSED

Submitted: January 24, 2018
Filed: February 15, 2018

Andrea J. Hinerman, Esq.
Senior Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Attorney for Petitioner

Timothy M. Sirk, Esq.
Keyser, West Virginia
Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

1.     "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994).

2.     "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984).

3.     "A person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel

Subcommittee." Syl. Pt. 7, *Lawyer Disciplinary Bd. v. Grafton*, 227 W.Va. 579, 712 S.E.2d 488 (2011).

4. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

5. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. Pt. 4, *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

6. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

7. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

8. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott,* 213 W.Va. 209, 579 S.E.2d 550 (2003).

WORKMAN, Justice:

This lawyer disciplinary proceeding against Respondent Timothy M. Sirk was brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("Board"). The Board's Hearing Panel Subcommittee ("HPS") determined that Mr. Sirk committed multiple violations of the West Virginia Rules of Professional Conduct ("Rules") and recommended that this Court suspend his law license for a period of one year, in addition to other sanctions. Based upon our review of the record submitted, ODC's brief and argument,[1] and the applicable legal precedent, we find Mr. Sirk committed numerous violations of the Rules. We disagree, however, with the HPS's recommendation that a one-year suspension is sufficient discipline. We find, instead, that Mr. Sirk's egregious misconduct warrants a three-year suspension from the practice of law and adopt the HPS's remaining recommended sanctions in full.

## I. FACTUAL AND PROCEDURAL HISTORY

Mr. Sirk is a lawyer practicing in Keyser, West Virginia. He was admitted to the West Virginia State Bar in 1983. Prior to these proceedings, he had no disciplinary history.

---

[1] Mr. Sirk failed to file a responsive brief in this matter, despite being ordered to do so by this Court in its briefing schedule. On or about December 27, 2017, Mr. Sirk submitted an "Answer to the Lawyer Disciplinary Board." However, this document did not comply with Rule 10 of the West Virginia Rules of Appellate Procedure. Therefore, we decline to consider it.

1

This matter involves two formal charges filed against Mr. Sirk that proceeded to hearing before the HPS in May 2017; several witnesses testified, including the two complainants, as well as Mr. Sirk who appeared pro se. In addition, ODC submitted several exhibits and the parties submitted Stipulated Findings of Fact and Conclusions of Law.[2] Based upon this evidence, the HPS filed its report with this Court in September 2017. The following is a brief summary of the complaints.

A. Complaint of Client #1

Client #1[3] and Mr. Sirk have been friends for more than fifty years; he previously retained Mr. Sirk to represent him in a variety of legal matters. When Client #1 became the executor of his mother's estate, he retained Mr. Sirk to represent him. Following the sale of Client #1's mother's home, Mr. Sirk opened a trust account at M&T Bank in Keyser, West Virginia, and deposited $30,068 from the sale of the home in August 2013. Client #1 and Mr. Sirk had a verbal agreement at the time the account was opened that Mr. Sirk could borrow from this account as long as he repaid the money. However, they never discussed the specific terms of this agreement, Mr. Sirk did not advise Client #1 to seek legal counsel, nor did Client #1 provide written consent for Mr. Sirk to withdraw funds.

---

[2] At the hearing, Mr. Sirk acknowledged signing the Stipulated Findings of Fact and Conclusions of Law; nevertheless, he noted exceptions to several paragraphs.

[3] Client #1 is Mr. George F. Wilson. He filed a complaint against Mr. Sirk in August 2014.

Client #1 visited the bank in January 2014 and inquired about the balance of this trust account. He was shocked to learn that Mr. Sirk had withdrawn approximately $16,800. After leaving the bank, Client #1 went to Mr. Sirk's law office to confront him. Mr. Sirk stated that he would repay the money, but it would take some time because he was experiencing financial problems and would need to take a second mortgage out on his home. Mr Sirk explained that he was dealing with personal problems, including children battling drug addictions. In July 2014, Mr. Sirk returned $16,000 to Client #1 and approximately a month later, he paid the remaining $800.

At the hearing held before the HPS, Mr. Sirk expressed remorse and apologized to Client #1. Mr. Sirk explained that he was suffering severe financial problems when he was supporting his grown son who is a heroin addict and was trying to secure drug rehabilitation. During this time, he learned that his other son was also a drug addict. Mr. Sirk testified that he was also caring for his elderly parents who were both very ill and dealing with his own personal health problems. Mr. Sirk stated that he turned to gambling and contemplated divorce.[4]

---

[4] Mr. Sirk testified:

> I just had too much and my life just kind of got out of control, and then just as a way of relaxing, I would sit at the hotdog stand and play the poker machines for an hour or two a day, but the amount of money I spent there was, . . . nothing at all compared to what I was spending on paying my children's bills and enabling them, and then trying to get them

(continued . . .)

3

In the matter involving Client #1, the HPS found that Mr. Sirk violated several of the Rules.[5] Specifically, the HPS concluded that Mr. Sirk violated Rule 1.8(a)[6] because Mr. Sirk withdrew money from a trust account containing money belonging to

---

into rehab. And I just – since that point in time, I've gotten things together somewhat. My – both of my children are doing much better. My wife and I have worked out all of our issues and are happily back living together again, but I still don't have a lot of time to work because my parents are – I live next door to them and I'm their primary caretaker.

And so I have limited my practice pretty much for the last year or so to just court appointed cases and occasional deeds, DUI's, you know no real civil litigation of any kind. And I'm making enough money that I'm paying my bills and getting by again. Things are better. I don't know that I'll ever be able to go back to a full-time practice of law. I'd certainly like to, but I just don't know that I am ever going to be able to do that.

[5] By order entered September 29, 2014, this Court approved comprehensive amendments to the West Virginia Rules of Professional Conduct. While the amendments became effective January 1, 2015, this Opinion applies the version of the Rules that was in effect at the time of Mr. Sirk's misconduct. However, we note that the substance of the new Rules would not have resulted in a different disposition of this case.

[6] Rule 1.8(a) provides,

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents in writing thereto.

his client but did not disclose the transaction and terms in writing, did not advise the client to seek independent counsel, and did not obtain written consent to the various transactions. The HPS further found that Mr. Sirk violated Rule 8.4(c) and Rule 8.4(d)[7] because he wrongfully misappropriated and converted funds belonging to his client and/or to a third person to his own personal use.

## B. Complaint of Client #2

In September 2013, Client #2[8] retained Mr. Sirk to file a bankruptcy petition and paid him a $2,500 retainer fee. For nearly a year, Client #2 contacted his office regularly to inquire about the status of her case and was told either that Mr. Sirk was still working on the matter or that there were cases ahead of hers and he would get to it soon. Client #2 met with Mr. Sirk in September 2014, and he assured her that they were ready to "go to court" and would receive a court date in the mail within the next month.

However, in October 2014, Client #2 received a form letter from Mr. Sirk advising that he was "winding down" his practice of law and would be closing the office soon. In this letter, Mr. Sirk assured his clients that he would continue to work on pending cases for as long as possible until they were completed but that he was not

---

[7]Rules 8.4(c) and 8.4(d) provide, "[i]t is professional misconduct for a lawyer to: . . . (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation. (d) Engage in conduct that is prejudicial to the administration of justice."

[8] Client #2 is Ms. Carrie E. Wolford-Watson. She filed a complaint against Mr. Sirk in December 2014.

5

accepting any new clients. The closure of Mr. Sirk's law office was sudden and the result of several reasons, primarily financial and health related; after the office closed, he no longer had access to the bankruptcy software or electronic filing, but he did not share this information with Client #2.

In December 2014, Client #2 texted Mr. Sirk to inform him that if she did not hear back from him soon regarding her bankruptcy matter that she would file a civil suit against him. She received a voicemail the following day from Mr. Sirk who responded that he was "broke due to an illness, . . . did not file bankruptcy for [her] and did not have [her] money to give back to [her] at this time." Mr. Sirk acknowledged that he owed her the $2,500 retainer fee, and suggested that she sue him and file a judgment lien against his house. Client #2 did file suit against Mr. Sirk in magistrate court and he simply confessed judgment. Mr. Sirk eventually returned half of Client #2's retainer fee, $1,250, in December 2014, but he failed to return her file timely and then failed to answer her telephone calls. Client #2 feared that her creditors could come after her home because of the delay in the bankruptcy action. She borrowed money from her parents to pay a retainer fee for another lawyer to file the bankruptcy petition.

At the hearing held before the HPS, Client #2 testified that she felt "very degraded by the system as well as taken advantage of by a man who knows he can get away with whatever he wishes to do." Mr. Sirk testified that he performed work on Client

6

#2's bankruptcy petition; but he failed to itemize his work on the case to justify withholding the remainder of the retainer fee.

In the matter involving Client #2, the HPS concluded that Mr. Sirk violated: Rule 1.3[9] for failing to act with reasonable diligence by failing to file the bankruptcy petition even though he received a retainer fee to do so; Rule 1.4(a) and 1.4(b)[10] for failing to keep Client #2 reasonably informed about the status of the case and failing to promptly comply with her reasonable requests for information; Rule 1.15[11] for failing to produce an accounting and/or itemized statement detailing her account when he claimed to have earned $1,250 of the $2,500 retainer fee; Rule 1.16(d)[12] for failing to provide a

---

[9] Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[10] Rules 1.4(a) and 1.4(b) provide, "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[11] The relevant portion of Rule 1.15 provides,

> (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion that is in dispute shall be kept separate by the lawyer until [the] dispute is resolved.

[12] Rule 1.16(d) provides, in relevant part: "(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled[.]"

full refund of the retainer fee after he failed to file the bankruptcy petition; and Rules 8.4(c) and 8.4(d)[13] for wrongfully misappropriating and converting client funds to his own personal use.

## C. Factors Considered by the HPS

In addition to the findings made by the HPS in each complaint, the HPS further concluded that Mr. Sirk violated duties to his clients, to the public, to the legal system, and to the legal profession. The HPS found he acted both knowingly and intentionally and the amount of real and potential injury to his clients was great. The HPS found several aggravating factors were present: dishonest or selfish motive; a pattern of misconduct; multiple offenses; and substantial experience in the practice of law. It also determined the following mitigating factors were present: an absence of a prior disciplinary record; personal or emotional problems; and remorse.

## D. The HPS's Recommended Sanctions

To this Court, the HPS recommended that Mr. Sirk's law license be suspended for one year. It further recommended that Mr. Sirk: be required to refund Client #2 the remaining $1,250 of the $2,500 retainer fee; complete an additional six hours of continuing legal education, including an additional three hours in the areas of ethics and office management above that which is already required; upon reinstatement,

---

[13] *See* note 7, *supra*.

8

be placed on one year of supervised practice by an active attorney should he be reinstated; comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure; and pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

### E. ODC's Motion to Enhance Sanctions

This Court scheduled this matter for argument and ordered the parties to file briefs. ODC filed its brief on November 22, 2017, and agreed with the HPS's recommended sanctions. Though ordered to do so by this Court, Mr. Sirk failed to file a brief.[14] On January 10, 2018, ODC moved this Court to enhance the previously requested sanctions because, in its opinion, Mr. Sirk committed an additional aggravating factor when he failed to file a brief in this case; ODC moved to enhance his suspension to practice law for a period of three years, along with other penalties.

## II. STANDARD OF REVIEW

In lawyer disciplinary proceedings, this Court reviews de novo the recommended decision of the HPS:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's]

---

[14] *See* note 1, *supra*.

recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994).

While affording deference to the HPS, this Court is responsible for determining the

ultimate resolution of lawyer disciplinary proceedings. As such, "[t]his Court is the final

arbiter of legal ethics problems and must make the ultimate decisions about public

reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3,

*Comm. on Legal Ethics of the W.Va. State Bar v. Blair,* 174 W.Va. 494, 327 S.E.2d 671

(1984). With these standards in mind, we proceed to the merits of this matter.

### III. DISCUSSION

In lawyer disciplinary matters, ODC has the burden "to prove the

allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part,

*Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). Based on

the record before us, this Court finds no reason to disturb the underlying determination by

the HPS that Mr. Sirk violated various provisions of the Rules.

ODC initially urged this Court to accept the HPS's recommendations,

including the one-year suspension. Ultimately, however, ODC maintained that Mr. Sirk

engaged in additional misconduct after the HPS completed its report and argued that his

law license should be suspended for three years in addition to other sanctions. ODC

asserted that Mr. Sirk violated duties to his clients, to the public, to the legal system, and to fellow members of the legal profession.

Further, in ODC's motion to consider an additional aggravating factor and to enhance the sanctions against Mr. Sirk, the evidence shows that Mr. Sirk ignored a directive of this Court when he failed to file a responsive brief. Not only does this behavior evince a disturbing pattern of misconduct, but it also shows a failure to obey an obligation imposed by a tribunal. As set forth in syllabus point seven of *Lawyer Disciplinary Board v. Grafton*, 227 W.Va. 579, 712 S.E.2d 488 (2011),

> [a] person named in a disciplinary proceeding before this Court, who, after the Hearing Panel Subcommittee has filed its Report with the recommended sanctions, commits a violation of the Rules of Professional Conduct related to the facts in the underlying complaint may be subject to an increased degree of discipline. Such subsequent misconduct may be relied upon by this Court as an aggravating factor that justifies enhancement of the recommended sanctions of the Hearing Panel Subcommittee.

We now turn our focus to the appropriate sanctions for Mr. Sirk's misconduct. This Court has emphasized that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994). Furthermore, we are mindful of this Court's holding in syllabus point three of

11

*Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358

S.E.2d 234 (1987):

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

With these principles in mind, we proceed to the relevant factors set forth in

Rule 3.16 of the Rules of Lawyer Disciplinary Procedure. In syllabus point four of *Office*

*of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998), this Court

held:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Beginning with the first *Jordan* factor, Mr. Sirk violated several Rules that

encompass ethical duties that he owed to the public and the legal system. However, the

most important duty he violated was that owed to his clients. The clients sought his

counsel, trusted his judgment, and expected that he would handle their legal affairs and proceeds accordingly. As discussed more fully below, Mr. Sirk's failure to act with integrity when dealing with client funds was especially egregious.

The second *Jordan* factor—the lawyer's mental state—is easy to discern. Mr. Sirk acted both knowingly and intentionally. In the matter involving Client #1, he made repeated withdrawals from the client's bank account for his own personal use. Notably, he continued to make withdrawals from this account even after Client #1 confronted him in January of 2014 and demanded repayment. In the matter involving Client #2, Mr. Sirk accepted the retainer fee in September 2013, then made little to no progress in the case for over a year, failed to keep her reasonably informed about the matter, and misinformed her about the true status of the case.

Applying the third *Jordan* inquiry—the injury or potential injury caused—it is obvious that Mr. Sirk's misconduct caused actual monetary damage to both clients. While Mr. Sirk eventually repaid Client #1, he still suffered injury at the time when deprived of his funds for several months. Moreover, the potential for such misconduct to cause serious injury was enormous considering Mr. Sirk's precarious financial situation; the loans were not subject to a written loan agreement or security, payment of interest, penalties or fees, or a schedule for repayment. Without proper documentation, Client #1 was completely vulnerable to losing this money. Likewise, Client #2's bankruptcy petition was delayed and she was frustrated when Mr. Sirk ignored her attempts to speed

13

things along. After Mr. Sirk failed to file the bankruptcy petition, he never paid the remainder of the retainer fee and Client #2 was forced to obtain a judgment against him in magistrate court. Finally, she had to borrow additional money from her parents to pay another lawyer's retainer fee and remained financially vulnerable to creditors.

We now turn to the final *Jordan* factor and consider Mr. Sirk's conduct in light of both mitigating and aggravating factors. This Court has held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

*Id.* at 210, 579 S.E.2d at 551, Syl. Pt. 3. By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify increase in the degree of discipline to be imposed." *Id.* at 217, 579 S.E.2d at 558, Syl. Pt. 4. A pattern of conduct and multiple offenses may be considered as aggravating factors. *Id.*

14

The HPS found the remorse shown by Mr. Sirk constituted a mitigating factor as well as the absence of a prior disciplinary record, and his personal/emotional problems. Conversely, several aggravating factors were also present including Mr. Sirk's dishonest or selfish motive, pattern of misconduct, multiple offenses, and his substantial experience in the practice of law. Courts have applied the aggravating factor of dishonest or selfish motives in cases where the lawyer intends to benefit financially from prohibited transactions. "For example, an attorney who solicits loans from a client because he is unable to find funding elsewhere acts selfishly because the attorney seeks to benefit directly from the client." *In re Disciplinary Proceeding Against Trejo*, 185 P.3d 1160, 1174 (Wash. 2008).

There is no "magic formula" for this Court to determine how to weigh the host of mitigating and aggravating circumstances to arrive at an appropriate sanction; each case presents different circumstances that must be weighed against the nature and gravity of the lawyer's misconduct. Considering all the relevant factors in this case, we conclude that the one-year suspension recommendation submitted by the HPS is too lenient a punishment for serious behavior that has become a pattern of continued wrongdoing.

This Court is not unsympathetic to Mr. Sirk's personal problems that contributed to his professional misconduct. Nevertheless, the severity of his misconduct cannot be overstated. When a lawyer violates Rules 8.4(c) and 8.4(d) by misappropriating

15

property belonging to a client, that lawyer breaches one of the fundamental duties of this profession. The New Jersey Supreme Court eloquently explained why this breach, perhaps more than any other, sullies the reputation of the entire legal profession and not merely the errant practitioner.

> Like many rules governing the behavior of lawyers, this one has its roots in the confidence and trust which clients place in their attorneys. Having sought his advice and relying on his expertise, the client entrusts the lawyer with the transaction—including the handling of the client's funds. Whether it be a real estate closing, the establishment of a trust, the purchase of a business, the investment of funds, the receipt of proceeds of litigation, or any one of a multitude of other situations, it is commonplace that the work of lawyers involves possession of their clients' funds. That possession is sometimes expedient, occasionally simply customary, but usually essential. Whatever the need may be for the lawyer's handling of clients' money, the client permits it because he trusts the lawyer.
>
> It is a trust built on centuries of honesty and faithfulness. Sometimes it is reinforced by personal knowledge of a particular lawyer's integrity or a firm's reputation. The underlying faith, however, is in the legal profession, the bar as an institution. No other explanation can account for clients' customary willingness to entrust their funds to relative strangers simply because they are lawyers.
>
> Abuse of this trust has always been recognized as particularly reprehensible: "(T)here are few more egregious acts of professional misconduct of which an attorney can be guilty than misappropriation of a client's funds held in trust."
> [*In re Beckman*, 79 N.J. 402, 404-05, 400 A.2d 792, 793 (1979)].

*Matter of Wilson*, 409 A.2d 1153, 1154-55 (N.J. 1979). Consequently, the fact that Mr. Sirk had no prior disciplinary record is of small significance; an attorney cannot shield

16

himself from the consequences of committing a serious ethical violation simply because it was his first offense.

Finally, an important factor that weighs heavily in our decision is our duty to maintain the integrity of the State Bar. In other words, "[u]nless we keep clean our own house . . . we cannot expect the public to have confidence in . . . our system of justice." *In re Goldman*, 588 P.2d 964, 985 (Mont. 1978) (Harrison, J., dissenting)). "Society allows the legal profession the privilege of self-regulation. Thus, it is of the utmost importance that the public have confidence in the profession's ability to discipline itself—lest the privilege be withdrawn." *Disciplinary Matter Involving Buckalew*, 731 P.2d 48, 55 (Alaska 1986).

This Court has increased the HPS's recommended sanction of a one-year suspension to a three-year suspension in lawyer disciplinary proceedings under factually similar circumstances. In *Lawyer Disciplinary Board v. Rossi*, 234 W.Va. 675, 769 S.E.2d 464 (2015), we found the lawyer's substantial misconduct warranted a three-year suspension from the practice of law when he failed to act with reasonable diligence in representing clients, failed to communicate with clients, failed to return client files in a timely fashion, engaged in conduct that was deceitful, and engaged in conduct that was prejudicial to the administration of justice. *Id.* at 686, 769 S.E.2d at 475. Mr. Rossi had comparable aggravating and mitigating factors as Mr. Sirk including a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. *Id.* at

17

685, 769 S.E.2d at 474. This Court considered an additional aggravating factor of dishonest or selfish motive based on Mr. Rossi's deceitful behavior when he lied to a client, accepted a retainer fee and then failed to perform work on the case. *Id*.; *see also Lawyer Disciplinary Bd. v. Hart*, 235 W.Va. 523, 538, 775 S.E.2d 75, 90 (2015) (rejecting HPS's recommendation of one-year suspension and imposing three-year suspension when lawyer failed to perfect appeals, violated his duty of communication, and agreed to perform certain legal services but failed to perform those services and, additionally, retained unearned fees after being discharged by clients); *Lawyer Disciplinary Bd. v. Aleshire*, 230 W.Va. 70, 79-80, 736 S.E.2d 70, 79-80 (2012) (disagreeing with HPS's recommendation of one-year suspension, finding "Mr. Aleshire was completely unresponsive to his clients in these two matters and caused both of them actual monetary damage. Additionally, Mr. Aleshire has shown a consistent unwillingness to respond to opposing counsel, court orders, and the ODC. Therefore, we believe a three-year suspension [is warranted].").

Consistent with this precedent, we impose a three-year suspension on Mr. Sirk's law license. Further, we adopt the remaining recommendations made to this Court by the HPS. We believe these sanctions will accomplish the goals of our disciplinary system by punishing Mr. Sirk, restoring public confidence in the ethical standards of our profession and serving as a deterrent to other members of the State Bar.

## IV. CONCLUSION

For the foregoing reasons, this Court imposes the following sanctions: Mr. Sirk's law license is suspended for three years;[15] he must refund Client #2 the remaining $1,250 of her retainer fee; he must complete an additional six hours of continuing legal education, including an additional three hours in the area of ethics and office management above that which is already required; upon reinstatement, Mr. Sirk will be placed on one year of supervised practice by an active attorney in his geographic area in good standing with the West Virginia State Bar and agreed upon by ODC; and he is ordered to pay the costs of these proceedings.

Sanctions Ordered.

---

[15] Mr. Sirk is required to comply with the provisions of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure regarding the duties of suspended lawyers. Moreover, pursuant to Rule 3.32 of those Rules, Mr. Sirk will be required to petition for the reinstatement of his law license.